Harold Franklin
PACIFIC JUSTICE INSTITUTE


IN THE UNITED STATES DISTRICT COURT
DISTRICT OF EASTERN WASHINGTON

| | |
|---|---|
| TIMOTHY BEUCA, | Case No.: Number |
| Plaintiff, | |
| vs. | PLAINTIFF'S VERIFIED SECOND AMENDED COMPLAINT |
| WASHINGTON STATE UNIVERSITY, | |
| Defendant | |

_____

## I.    INTRODUCTION

Dr. Beuca had worked tirelessly throughout the early days, weeks, and months, of the CV19 Pandemic both honing his skills and saving lives. Dr. Beuca followed all safety procedures as a resident doctor and the hospital where he worked felt confident that accommodation was possible. Toward that end, Dr. Beuca filled out both WSU and Providence's exemption form and submitted each, respectively. WSU denied Dr. Beuca's accommodation request and denied his exemption because [they] deemed his beliefs insincere. However, Providence approved Dr. Beuca's request and accommodation.

PLAINTIFF'S VERIFIED SECOND AMENDED COMPLAINT - 1

In regard to the reason WSU gave: accommodation presented a hardship because "the University determined that it would pose an undue hardship and/or a threat to yourself and others to allow you to remain in your position while unvaccinated." Defendant WSU alleged to have considered possible accommodations which would mitigate the threat posed by allowing [Dr. Beuca] to remain unvaccinated in his position but did not state what accommodations were considered. Defendant WSU went on to state that Dr. Beuca would be unable to "effectively" perform many of [his] important job duties if appropriate measures to sufficiently mitigate the threat posed by remaining unvaccinated were to be implemented and/or no appropriate mitigation measures were identified. Defendant WSU never specified what "effective" performance was or what appropriate measures to sufficiently mitigate [his] threat were or was.

In stark contrast, Providence informed Dr. Beuca, on October 21, 2021 three days after Defendant WSU's denial, that his CV19 exemption request was approved and he would be granted an accommodation with the caveat that he was expected to comply with the facility's designated infection prevention methods.

Of note, no meetings were held with Dr. Beuca to glean more information regarding his beliefs or to determine if an accommodation against ingesting CV-19 vaccines could made. These actions show a premeditated

determination to deny accommodations and a failure on the part of WSU to afford

employees of faith an interactive accommodation process.


### III.    JURISDICTION AND VENUE

This Court has original jurisdiction over this action pursuant to 28 U.S.C. §

1331, as it arises under the laws of the United States, and presents a federal

question, pursuant to 28 U.S.C. § 1343(a)(3)-(4). The Court also has jurisdiction

under 42 U.S.C. §2000e5(f)(3).

Venue is proper within this judicial district and division, pursuant to 28

U.S.C. §1391(b), because the relevant events have occurred and are threatened to

occur in this jurisdictional district and division. The Defendant's place of business

is in this district.

This Court has supplemental and concurrent jurisdiction to hear State claims

brought before the Court pursuant to 28 U.S.C. § 1367(a).

Plaintiffs' claims for damages are authorized by 28 U.S.C. §2201-02, Civil

Rules 57 and 65, and the general legal and equitable powers of this Court, which

empower this Court to grant the relief requested.

Plaintiff was employed by Defendant at all times relevant herein and was an

"employee" as defined under RCW §49.60.040(10) and 42 U.S.C. §2000e(f).

PLAINTIFF'S VERIFIED SECOND AMENDED COMPLAINT - 3

Defendant is a Washington public university subject to the laws of the state and bound by the same. Defendants was, at all times relevant hereto, Plaintiff's employer.

Plaintiff originally filed this action in Whitman County Superior Court, and Defendant WSU removed to federal court in the Eastern District of Washington.

Following remand from the 9th Circuit panel the Mandate was entered on August 9th, 2024, Dkt #13, and the Court entered an Order, Dkt #14, that the parties present a joint status report. The Court approved a filing of an amended complaint in accord with Fed. R. Civ. P. 15(b) following presentation of a stipulated motion

## IV.    PARTIES

Plaintiff Timothy P. Beuca, Dr. Beuca, was a resident living in the state of Washington and working as an employee for Washington State University in [its] Elson Floyd School of Medicine residency program. Dr. Beuca is an employee as that term is defined at law and is entitled to the protections of 42 U.S.C. 2000(e),Title VII, and RCW §49.60, WLAD, as a resident employee.

Defendant WSU is an employer and a university located in the state of Washington with a primary campus location of Pullman, WA while the school of medicine is headquartered in Spokane, WA. WSU is an employer as that term is defined in the laws of accommodation.

PLAINTIFF'S VERIFIED SECOND AMENDED COMPLAINT - 4

# V.    FACTS

1.    Dr. Beuca completed his undergraduate degree at University of Washington earning a Bachelors biology and minoring in Chemistry.  He then matriculated to the medical program at Western University in Lebanon Oregon. Following nine years of education Dr. Beuca matched into the Internal Medicine Residency program at the Washington State University ("WSU") Elson Floyd School of Medicine, and began residency work in Everett, WA.

2.    WSU has a main campus located in Pullman, WA while the School of Medicine is headquartered in Spokane, WA., but Providence Hospital where Dr. Beuca worked is located in Everett, WA.

3.    Dr. Beuca was a first year resident primary care physician in the year 2021, employed by Defendant WSU. Dr. Beuca anticipated completing three years in the residency program through WSU in order to practice independently as a board-certified Internal Medicine physician.

4.    Dr. Beuca was in good standing entering his residency and had been assigned to the Providence Hospital location in Everett.

5.    There was never a time during his two years of clinical rotations in medical school and residency that CV19 was not an issue.

6.      Dr. Beuca was unvaccinated the entirety of his time working as a resident at Providence Hospital in Everett under WSU's program.

7.      Dr. Beuca followed stringent safety protocols implemented by Providence in order to protect he and his patients from the risks of CV19. This included wearing of Personal Protective Equipment ("PPE") as well as other safety measures.

8.      The safety measures included daily symptom checks that Dr. Beuca self-attested to on his phone to ensure he did not come to work symptomatic. Mask fittings were also performed to ensure proper fit of the N95 surgical masks worn, hand sanitizing stations were provided outside patient rooms, and myriad other safety precautions were taken to ensure the safety of everyone in the hospital. If a known CV19 positive patient was seen the hospital provided gowns, disposable gloves, eyewear, disinfectant wipes, and disposable stethoscopes.

9.      As a doctor there is a professional interest and responsibility to voice concerns over products/medicine and to openly discuss such concerns for the benefit of the practice of medicine and patients.

10.     Dr. Beuca had concerns about mRNA technology as a doctor and professional with an education in chemistry and biology.

PLAINTIFF'S VERIFIED SECOND AMENDED COMPLAINT - 6

11.     Over the course of the pandemic Dr. Beuca had discussions regarding these concerns with his Program Director and Associate Dean in which they discussed the technology of mRNA. During these discussions both individuals asked Dr. Beuca whether or not he was vaccinated. Dr. Beuca was surprised to be asked about his vaccination status as no one from WSU had previously asked about other vaccines or medicines he [took], and vaccination was not a requirement of WSU or Providence, at the time.

12.     Dr. Beuca responded that he was ill informed regarding the vaccine and needed more information regarding long term effects of mRNA technology.

13.     [They] responded that WSU would be providing lectures on the mRNA technology, and subsequently a Mr. Diaz did provide such lectures to the students/residents.

14.     Over the course of the summer of 2021 Dr. Beuca began to further research vaccines and the mRNA technology. [He] discovered, much to his surprise, that vaccines utilized aborted fetal cell lines to bring [them] to market.

15.     Dr. Beuca began to pray, fast, and seek God's will regarding use of vaccines, including the CV-19 vaccine, following his shocking discovery

PLAINTIFF'S VERIFIED SECOND AMENDED COMPLAINT - 7

that aborted fetal cells were used in the development of both traditional and mRNA vaccines.

16.      Dr. Beuca had previously utilized vaccines not knowing that aborted fetal cells were used in bringing the product to market.

17.      Through prayer and fasting Dr. Beuca felt a deep conviction that vaccination, including the CV-19 vaccine, was violative of God's will for him, and that he should not obtain the vaccine.

18.      Thereafter, the State of Washington mandated by Proclamation of the Governor 21-14.1 et seq. ("The Proclamation") SARS-CoV2 ("CV-19") vaccination for all persons employed by the State or engaged in healthcare on or before October 18, 2021. The Proclamation allowed for accommodation if a person(s) sincerely held religious beliefs conflicted with vaccination against CV19, and for medical reasons under ADA. A true and correct copy of the Governor's Proclamation accompanies this Complaint, is incorporated in full, and is marked and referenced as **Exhibit 1**.

19.      Proclamation 21-14 et seq. requires all State Agencies to direct their employees to subject themselves to a CV-19 vaccination or face termination from their employment, and further required all healthcare practitioners to become vaccinated.  Proclamation 21-14 et seq. allowed for religious accommodation as required under law, Title VII and WLAD.  Defendant

WSU was Dr. Beuca's employer, but Defendant WSU did not operate the hospital at which Dr. Beuca worked. Providence Hospital operated the hospital where Dr. Beuca worked and is a hospital system operating within the State of Washington, headquartered here, and operating in seven states in the United States.

20.    Defendant WSU, as the employer, mandated vaccination in compliance with the Governor's Order and drafted an exemption and accommodation form which [it] supplied to employees for filling out and submission. The form has a date of 9/1/21. A true and correct copy of the form accompanies this Complaint, is incorporated in full, and is marked and referenced as **Exhibit 2**.

21.    Dr. Beuca filled out the form ("Exemption Form") provided by Defendant WSU which stated that "qualified" applicants and employees would be provided reasonable accommodation. The form does not state what "qualifications" are needed to afford accommodation to the requesting employee. Id.

22.    On the form, Dr. Beuca described his upbringing as a Pentecostal Christian. Dr. Beuca was a mere child when his parents fled Romania to escape religious persecution. These events instilled the value of faith and freedom to exercise [it] in Dr. Beuca. Exhibit 2 ¶4.

23.     Around the first week of September WSU's Program Administrator sent out an email with specific instructions for filling out and submitting exemption forms.

24.     WSU sent their instructions on September 3, 2021 with a "due date" of September 10, 2021. Another administrator sent the Providence exemption form on September 15, 2021.

25.     Dr. Beuca answered all questions asked of him by Defendant WSU on the form provided to him by Defendant WSU. The answers included an objection to the fetal cell line derivation of vaccines, and an admission that over time his knowledge and conviction regarding aborted fetal cell use in vaccines led him to change utilization of the same for his health. Id. ¶3,5.

26.     Nowhere on the form provided by Defendant WSU was there an opportunity for Dr. Beuca to suggest or request an accommodation. The form solely focused on the religious beliefs of Dr. Beuca including questions regarding how long he had had faith-based convictions, prior vaccinations, and whether the accommodation would be *temporary*. See generally Exhibit 2.

27.     Dr. Beuca submitted his request on or around September 9, 2021. Id.

28.     On or around September 15, 2021 Dr. Beuca received Providence's exemption form from Jessica Gallien, WSU Administrator for the Internal

Medicine—Everett Residency. A true and correct copy of the form accompanies this Complaint, is incorporated in full, and is marked and referenced as **Exhibit 5**.

29.    WSU's form states that more information may be needed and that Human Resource Services ("HRS") would reach out if additional information was needed to process [his] request. Id.

30.    No one from HRS every reached out for additional information, clarification, or to discuss Dr. Beuca's job functions at Providence.

31.    Additionally, on September 9, 2021, the same day Dr. Beuca submitted his request for exemption and accommodation, Program Director, Dr. Hansen, pulled him aside and revealed some disturbing information relating to his exemption and accommodation request. Dr. Hansen told Dr. Beuca that the Attorney General was reviewing his request and exemption and that Dr. Beuca would risk termination and delay his boards.

32.    This disturbing revelation was extremely stressful to Dr. Beuca.

33.    Thereafter, on October 18, 2021, Providence informed Dr. Beuca that he **could** be accommodated without hardship, but three days prior WSU had stated to Dr. Beuca, via email, that he **could not** be accommodated. Defendant WSU stated , "we are **unable to approve your request** for an *exemption and accommodation*." In an effort to explain and clarify the

exemption denial Defendant WSU proffered the following: "In considering your request for accommodation, the University considered both the information you submitted as well as comments you made to WSU staff regarding adverse reactions to the vaccine being the cited reason for not receiving the CV19 vaccin[ation]." A true and correct copy of the email communication from WSU denying the Religious Exemption accompanies this Complaint, is incorporated in full, and is marked and referenced as **Exhibit 4**. A true and correct copy of the email communication from Providence approving the Religious Exemption accompanies this Complaint, is incorporated in full, and is marked and referenced as **Exhibit 6.**

34.    WSU did not disclose to Dr. Beuca how or why his questioning of mRNA vaccines negatively reflected on his sincerely held religious beliefs as no one from HRS reached out to clarify or speak with him.

35.    WSU's email went on to state: "Based on your prior comments in conjunction with the timing of your request for a religious accommodation, the University doubts the sincerity of your religious belief, practice or observance. Ex. 4 ¶3.

36.    Defendant WSU gave no information on what the "timing" of Dr. Beuca's request was and why it cast shade on his sincerity of beliefs.

37.   Defendant WSU went on to state [it] determined that: "it would pose an undue hardship and/or a threat to yourself and others to allow you to remain in your position while unvaccinated. The essential functions of [Dr. Beuca's] job were evaluated to determine if there was a possible accommodation that would mitigate the threat posed by allowing [him] to remain unvaccinated while performing [his] job duties. Id. ¶4.

38.   Defendant WSU did not provide any information regarding which job duties could not be performed unvaccinated, and whether or not Providence had notified Defendant WSU that he could not perform said job duties while unvaccinated or if it posed an undue burden or hardship on their business operations to accommodate [him].

39.   Defendant WSU went on to state that, "In [Dr. Beuca's] case, [he] would be unable to effectively perform many of [his] important job duties if appropriate measures to sufficiently mitigate the threat posed by remaining unvaccinated were to be implemented and/or no appropriate mitigation measures were identified. Id. Because Dr. Beuca had never been asked to identify accommodation(s), and Defendant WSU did not state what accommodations were considered Dr. Beuca was never given meaningful opportunity within the accommodation process. Id.

40.    Defendant WSU stated that the "activities" included direct hands-on patient care to vulnerable and high risk populations.  Id.

41.    There was no intimation why Dr. Beuca's current safety measures and the hands-on patient care he had been providing for 4 or more months was determined unsafe and/or a hardship for WSU, but not a hardship for Providence where Dr. Beuca worked.

42.    Defendant WSU did not operate, oversee, control, or otherwise carry out day to day functions at Providence Hospital where Plaintiff worked. Providence Hospital was, in operation if not in fact, the entity which would have born the burden of accommodation, if any, and determined the day to day functions of Dr. Beuca's job.

43.    Three days after WSU's denial of both exemption and accommodation, on October 21, 2021, Dr. Beuca was **granted** an exemption and accommodation to the vaccination requirement by Providence. Ex. 6

44.    In fact, Providence's Medical Staff Coordinator at Providence Regional Medical Center's Women's and Children's Division, Glenn Budlow, approved Dr. Beuca's medical exemption. Ex. 6

45.    Of note: WSU knew that Providence had its own set of exemption forms as evidenced by the fact that Jessica Gallien, an employee of WSU, sent each and all residency students employed in the Everett locale a copy of the Providence exemption forms to be filled out. **Ex. 5**.

46.    The communication from Providence which approved Dr. Beuca's request for accommodation stated that Dr. Beuca was expected to comply with [his] facility's designated infection prevention protocols, and, further, that Dr. Beuca would be expected to comply with COVID-19 testing and enhanced PPE. The accommodation was subject to change pending updated information from federal, state, and local authorities. Id. Providence never communicated to Dr. Beuca that there was a change in guidance from authorit[ies].

47.    On November 2, 2021 Dr. Beuca received a letter from John Tomkowiak, Founding Dean of WSU School of Medicine, stating that [he] had reviewed the "Notice of Charges" dated October 18, 202 as well as a letter from Dr. Beuca's legal counsel. The letter went on to state that because Dr. Beuca had not provided proof of vaccination he was not "qualified" for his position, and was thereafter prohibited from performing work. This letter did not mention the discrepancy between Providence's determination that Dr. Beuca could be accommodated and WSU's decision

that he could not. A true and correct copy of the "WSU Notice of Termination" letter accompanies this Complaint, is incorporated in full, and is marked and referenced as **Exhibit 7**.

48.     Dr. Beuca was informed in the same letter that he was being separated from employment thus jeopardizing the years, hundreds of thousands of dollars, and lifelong pursuit of happiness he had enjoyed and was so close to obtaining.

49.     Dean Tomkowiak went on to state that Dr. Beuca had 10 working days to appeal the decision either orally or in writing. Id. ¶ 3

50.     The letter closed by stating that a final decision would ultimately be made by Vice President and Chancellor Daryll B. DeWald of WSU Health Sciences, and that was the person to whom Dr. Beuca was to appeal to. Id. ¶4.

51.     Dr. Beuca timely appealed the decision on November 8, 2021 by letter addressed to Mr. DeWald. The letter informed WSU that Dr. Beuca was, in fact, qualified to continue his residency based on [the] approval letter from Providence approving Dr. Beuca's request for exemption and accommodation. (see Ex. 6). A true and correct copy of the Beuca Appeal letter ("appeal letter") accompanies this Complaint, is incorporated in full, and is marked and referenced as **Exhibit 8**.

52.    The appeal letter made note of the fact that Dr. Beuca had natural immunity to CV19 which was proven through labs he had obtained. A true and correct copy of the Dr. Beuca's Antibody Report accompanies this Complaint, is incorporated in full, and is marked and referenced as **Exhibit 9**.

53.    WSU never indicated to Dr. Beuca why his antibodies were insufficient to provide protection similar to vaccination and/or did not over come perceived risk.

54.    Dr. Beuca further expressed his shock that he was being forced out of a WSU's residency program on the basis of his religious beliefs. He was "floored" that in less than one generation the religious persecution his parents had fled had come quickly to his doorstep, in America, where he was being forced to relive his family's history on the soil of the United States. Ex. 8 ¶2

55.    The appeal letter made an impassioned and forthright attempt to clarify any confusion regarding Dr. Beuca's faith and the reasons he could not be vaccinated. The research leading Dr. Beuca to realize aborted fetal cells, his prayers, and scripture round out the letter and give the reader insight into the religious nature of Dr. Beuca's life and decision making process.

56.    Thereafter, on November 30, 2021, WSU rejected Dr. Beuca's appeal letter by focusing on the fact that all of the "processes and procedures" WSU utilized to deny his sincerity of beliefs were followed. The process included a "blind" review of his faith. His faith was "insufficient" to grant an exemption. The letter does not state what is "sufficient" to grant an exemption, what standards were used, what "sufficient" faiths were approved, or who the "blind" review was made by and what qualified them as a "sufficient" faith-based person/people group or whether they were of the same faith as Dr. Beuca, i.e. Christian. A true and correct copy of the WSU Denial of Appeal ("appeal denial") accompanies this Complaint, is incorporated in full, and is marked and referenced as **Exhibit 10**.

57.    Dr. Beuca was never told what facts or information he could convey to "sufficiently" explain his faith-based reason for declining the CV19 vaccine. The letter stated that the information provided on September 9th, 2021 was not sufficient to grant an exemption, but did not make mention of the additional information contained in the appeal letter and why that information still fell short of the faith "sufficiency" required by WSU. Id. ¶4

58.    Again, the "prior comments and timing" of Dr. Beuca's request for accommodation were noted in the appeal denial. **Id.**

59.    Also, Mr. Dewald reiterated that accommodation could not be made but failed, utterly, to discuss why the [CV19] antibody test, presented by Dr. Beuca, would not be considered, nor why antibodies were insufficient to overcome the "threat posed by allowing [Dr. Beuca] to remain unvaccinated while performing [his] job duties."  Id.

60.    The letter went on to state that "[Dr. Beuca] would be unable to effectively perform many of [his] important job duties if appropriate measures to sufficiently mitigate the threat posed by remaining unvaccinated were to be implemented and/or no appropriate mitigation measures were identified. Id.

61.    Mr. Dewald did not explain what job duties Dr. Beuca would be unable to perform with mitigation measures in place, whether Providence had required the mitigation measures, and whether or if Providence had been included in the identification [of accommodations] process.

62.    Further, Mr. Dewald's letter did not address the discrepancy in Providence having approved Beuca's accommodation and why it proved an undue burden for WSU, who did not own or operate the hospital, but not Providence, who did own and operate the hospital where Dr. Beuca was a resident.

63.    Perhaps the most perplexing of all, WSU sent an email to **all residents** of the 2021-22 class stating, among other things, that, "Three weeks ago, the College of Medicine and the State of Washington decided not to 'accept' Dr. Beuca's request for COVID vaccination exemption." Publicizing private health information and broadcasting it to his class was unnecessary. What is more, the email states that it was **not** a decision that was made locally or by the program. The decision was alleged to have been made at the "state level" and by senior leadership at WSU.  A true and correct copy of the aforementioned WSU Email  ("HIPPA email") accompanies this Complaint, is incorporated in full, and is marked and referenced as **Exhibit 11**.

64.    The accommodation process is meant to be meaningful and give effect to the law under Title VII and WLAD. The discrepancy between Providence's accommodation and WSU's failure to accommodate evidence a lack of good faith effort by WSU. The admission that the "decision" was made at the "state level" further casts shade on the legitimacy of the determination.

65.    Providence, a Catholic entity who oversaw the day-to-day functions and responsibilities of Dr. Beuca's job deemed his beliefs sincere, and also believed that accommodation would not pose an undue hardship.

66.     Defendant WSU, despite a grant of accommodation from the facility where Dr. Beuca worked day in and day out, failed to reasonably accommodate the religious beliefs and need for accommodation requested by Dr. Beuca.

67.     Following WSU's termination Dr. Beuca had to move far from family and friends to Florida where an HCA Healthcare hospital, fighting the same pandemic, easily and graciously accommodated [him].

68.     Many of Dr. Beuca's family and friends, who work in healthcare, were accommodated in the Seattle area including those who worked for Evergreen, Overlake, and Multi-Care health care centers/hospitals.

69.     Currently, Dr. Beuca is Chief Resident vying for a highly coveted cardiology fellowship.

70.     As a result of the denial of the request for a religious exemption and a reasonable accommodation under Title VII and WLAD, the Plaintiff [was] terminated from his employment.  This constitutes an adverse employment action.

71.     The Plaintiff received his right to sue letter from the Equal Employment Opportunity Commission on September 5, 2022.  Plaintiff filed a claim for damages, "tort" form on or about November 21, 2022.  More than 60 days since the claim was filed, therefore , the Plaintiff has complied

with RCW 4.92. et. seq. A true and correct copy of the aforementioned EEOC and ESD tort form accompany this Complaint, are incorporated in full, and are marked, respectively, and referenced as **Exhibit 12 (EEOC) and Exhibit 13 (WA ESD Tort Form)**.

### VI.    FIRST CAUSE OF ACTION

**Violation of Title VII 42 USC §2000e Against Defendants forFailure to Accommodate**

72.    Plaintiff re-alleges the facts above and incorporate those herein by reference as if fully alleged.

73.    Defendant WSU was an employer and Plaintiff Dr. Beuca was an employee of WSU as those terms are defined in 42 U.S.C. 2000(e),Title VII.

74.    By submitting a request for religious exemption and accommodation under Title VII, the Plaintiff engaged in actions protected by federal law.

75.    Plaintiff apprised the Defendants of his sincerely held religious belief, but he was denied a religious exempt by the Defendants from the CV19 vaccine requirement. He was further denied his appeal.

76.    The Defendants subjected the plaintiff to adverse employment action and the plaintiff lost his [residency] job due to his sincerely held religious beliefs.

77.    The Defendants refused to entertain requests for religious accommodation under Title VII, and engage in a meaningful analysis of the requested accommodation.

78.    Wherefore, Plaintiff brings this claim under 42 U.S.C. § 2000(e) and requests the relief set forth below in the prayer for relief.

## VII.   SECOND CAUSE OF ACTION:

### Violation of State Law Prohibiting Religious Discrimination
### RCW 49.60.180 et. seq.

79.    The Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.

80.    Plaintiff Dr. Beuca was an employee and Defendant WSU was an employer as those terms are defined in WLAD. Like Title VII, RCW 49.60 et. seq. (WLAD) prohibits employers from discharging individuals from employment on the basis of the individuals' religion and or creed, as Defendants have done here.

## VIII. PRAYER FOR RELIEF

Wherefore, Plaintiff requests that the Court enter judgment in their favor, and against the Defendants, for full relief, including the following:

81.    Damages including lost wages, benefits, and all other lost income stemming from the discriminatory actions of Defendant(s).

82.    Attorney's fees and costs; and,

83.    Declaratory relief that WSU, failed to implement policies and procedures that encouraged engaging in a meaningful analysis of what accommodations may be made for those protected by Title VII  when asserting their sincerely held religious beliefs against being vaccinated; in so doing WSU denied the Plaintiff of his rights and entitlements at law.

84.    Award the plaintiff compensation for all past, present, and future lost wages including front pay.

85.    Award the plaintiff the costs of this action, including the fees and costs of experts, together with reasonable attorney's fees.

86.    Award the plaintiff total general and special damages in amount to be proven at the time of trial.

87.    Grant the plaintiff such additional and further relief as this Court deems necessary, just, and equitable.

Respectfully Submitted this **15th day of** October, 2024

/s/Harold H. Franklin, Jr.
WSBA #20486
WSBA #35922
Pacific Justice Institute

Attorneys for the Plaintiff
459 Seneca Avenue NW
Renton, WA 98057
hfranklin@pji.org